```
               IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION


In re: The Qualstan          :     Case Nos. 2:04-cv-759,
Corporation,                              2:04-cv-993
                             :
       Debtor,                     JUDGE GRAHAM
                             :
                                   Chapter 11
                             :
                                   Judge Calhoun
                             :     (Case No. 02-60473)
_____

Michael J. Baumann Company,  :
Inc.,
                             :
       Plaintiff-Appellant,
                             :
    vs.                            Adv. Pro. No. 02-02542
                             :
The Qualstan Corporation,
et al.,                      :

       Defendants-Appellees. :
```

OPINION AND ORDER

Michael J. Baumann Company, Inc. ("Baumann") brings this appeal of the bankruptcy court's July 8, 2004 Amended Order holding that a construction mortgage held by National City Bank has priority over mechanics' liens held by Baumann. The bankruptcy court based its decision on Ohio Revised Code §1311.14, which gives construction mortgages priority over mechanics' liens under certain conditions.

For the reasons stated below, the Court finds that National City does have priority under O.R.C. §1311.14, and, therefore, the appeal is dismissed.

### I. <u>Jurisdiction and Standard of Review</u>

This Court has jurisdiction to hear bankruptcy appeals under 28 U.S.C. §158(a). A bankruptcy court's findings of fact must be upheld unless clearly erroneous. <u>In re Downs</u>, 103 F.3d 472, 476-77 (6th Cir. 1996); <u>In re Southern Indus. Banking Corp.</u>, 809 F.2d 329, 331 (6th Cir. 1987); <u>see</u> <u>also</u> Bankr. R. 8013. A bankruptcy court's conclusions of law are reviewed de novo. <u>Downs</u>, 103 F.3d at 476-77; <u>Stephens Indus. Corp., Inc. v. McClung</u>, 789 F.2d 386, 389 (6th Cir. 1986).

### II. <u>Background</u>

#### A. Findings of Fact

The following recitation of facts is drawn from the bankruptcy court's findings of facts, as stated in its July 8, 2004 Amended Order.

The debtor, Qualstan Corporation, developed condominiums and homes in Columbus, Ohio until going bankrupt in 2002. Qualstan developed many housing sites, including a project called Holt Park III that is at issue in this case.

Qualstan hired Baumann to perform plumbing contractor work. Baumann provided labor and materials for construction of various single family units, including ones at Holt Park III. Construction and plumbing work first began at Holt Park III in December 1997. The parties stipulated to the bankruptcy court that Baumann properly served and perfected its mechanics' liens for the Holt Park III project under Ohio law. <u>See</u> O.R.C. §§1311.06, 1311.07.

Baumann did not get paid for labor and materials it provided between October 2001 and December 2001 on the Holt Park III

project.  Under a May 9, 2001 construction agreement between Baumann and Qualstan, Baumann was to be paid twice for each unit it worked on -- once after completing rough-in work and once after finishing all plumbing work.  Baumann did not bill Qualstan for completed work; instead, Qualstan paid Baumann according to draw schedules.

National City provided a revolving line of credit to Qualstan.  On October 31, 1995, National City filed a mortgage -- titled "Open-End Mortgage, Assignment of Rents and Security Agreement" -- in Franklin County, Ohio.  The mortgage secured a $10 million revolving line of credit promissory note.  The Holt Park III property was not provided as security for the 1995 mortgage.

On December 9, 1997, the mortgage was modified by the execution of a Mortgage Modification Agreement between National City and Qualstan.  This modification was improperly recorded in Franklin County on December 16, 1997.  The modification was refiled properly on March 16, 1998.  The parties stipulated that work began at Holt Park III before the refiling of the modification.  The Holt Park III property was provided as security for the modification.  After the modification was refiled, National City filed various other modifications to the mortgage that increased the line of credit to $25 million and encompassed additional properties as security.

The line of credit extended to Qualstan funded many different construction projects, as well as company overhead.  When work on Holt Park III began, Qualstan submitted to National City a monthly borrowing base schedule that disbursed loan proceeds according to the level of completion of construction work.  Qualstan normally

submitted these draw requests to National City twice a month. At some time between May 2001 and November 2001, National City ceased distributing loan funds based on percentage of completeness and instead distributed funds based on cost. National City did this in an effort to tighten its lending practices with Qualstan.

National City disbursed loan proceeds to Qualstan. There were times when Qualstan requested National City to wire funds to contractors. In these cases, National City deposited loan proceeds into Qualstan's account and then wired the money out of Qualstan's account and into the contractor's account.

Qualstan defaulted on its line of credit in November 2001. National City stopped funding Qualstan's draws in November of 2001, but it continued to fund money for Qualstan's overhead and payroll. Qualstan filed for Chapter 11 bankruptcy on August 14, 2002.

**B. Procedural History**

Baumann initiated an adversary proceeding to determine the priority of its mechanics' liens, including the liens for Holt Park III. National City filed a motion for summary judgment, arguing that it had priority under both O.R.C. §1311.14 (providing priority to construction mortgages) and O.R.C. §5301.232 (providing priority to open-end mortgages). The bankruptcy court denied National City's motion for summary judgment as to both statutes. See Nov. 20, 2003 Opinion and Order.

The matter then went to trial before the bankruptcy court. Following trial, the bankruptcy court issued a decision granting priority to National City under O.R.C. §1311.14. The bankruptcy court found that National City qualified for protection under §1311.14 because the line of credit to Qualstan met the general

statutory requirements for construction mortgages under §1311.14 and because National City had complied with the disbursement provisions of §1311.14. As to §5301.232, the bankruptcy court held that National City could not obtain priority under that section because Baumann's mechanics' liens became effective before the 1998 modification securing Holt Park III was perfected.

Baumann now appeals the bankruptcy court's decision to grant priority to National City under O.R.C. §1311.14.

### III. Discussion

#### A. Ohio Revised Code §1311.14

Under O.R.C. §1311.14, construction mortgages have priority over mechanics' liens, even if the mortgage is filed after a lien becomes effective. As one Ohio court put it, "R.C. 1311.14, the construction mortgage statute, directs that mortgages used to finance improvements to real estate and which are otherwise in compliance with the requirements outlined therein, have priority over subsequently filed R.C. 1311.13 liens despite the fact that the mortgage is filed after the commencement of improvements." French's Inc. v. Dominic Constr., Inc., Nos. 93-T-4969, 93-T-4978, 1995 WL 1100094, at *2 (Ohio Ct. App. June 30, 1995). See also Connecticut Gen. Life Ins. Co. v. Birzer Bldg. Co., 101 N.E.2d 408, 414 (Ohio Ct. Com. Pl. 1950) (stating that the purpose of the statute "is to give to a construction mortgage priority over mechanics' liens although the mortgage was recorded subsequent to the effective date of the mechanics' liens").

The first paragraph of §1311.14 provides:

> Except as provided in this section, the lien of a
> mortgage given in whole or in part to improve real

>   estate, or to pay off prior encumbrances thereon, or both, the proceeds of which are actually used in the improvement in the manner contemplated in sections 1311.02 and 1311.03 of the Revised Code, or to pay off prior encumbrances, or both, and which mortgage contains therein the correct name and address of the mortgagee, together with a covenant between the mortgagor and mortgagee authorizing the mortgagee to do all things provided to be done by the mortgagee under this section, shall be prior to all mechanic's, materialmen's, and similar liens and all liens provided for in this chapter that are filed for record after the improvement mortgage is filed for record, to the extent that the proceeds thereof are used and applied for the purposes of and pursuant to this section. Such mortgage is a lien on the premises therein described from the time it is filed for record for the full amount that is ultimately and actually paid out under the mortgage, regardless of the time when the money secured thereby is advanced.

O.R.C. §1311.14.

The construction mortgage statute was enacted to encourage lenders to provide the funding necessary to complete construction projects that were already in progress. Before the construction mortgage statute was enacted, "mortgage companies would not make loans after buildings had been started as the lien holders could come in and claim priority over them." Kingsberry Mortg. Co. v. Maddox, 233 N.E.2d 887, 889 (Ohio Ct. Com. Pl. 1968). "There was then enacted the construction loan law, which in substance, provided that the mortgage lien would predate the time of filing and would come ahead of the mechanic's liens, provided it was paid out in certain specified ways . . . ." Id.; see also Rider v. Crobaugh, 125 N.E. 130, 133, 100 Ohio St. 88, 98-99 (Ohio Sup. Ct. 1919).

Here, Baumann does not challenge the bankruptcy court's holding that the National City mortgage satisfies the general statutory requirements found in the first paragraph of §1311.14.

6

The mortgage was given to improve real estate, including Holt Park III. The mortgage contained the correct name and address of the mortgagee and recited the necessary covenant.

A mortgage that satisfies those general requirements must also comply with the disbursement requirements stated in paragraphs (A) through (G) of §1311.14 in order to achieve priority. See Kingsberry, 233 N.E.2d at 889 (noting that paragraphs (A) through (G) "provide[] the only way in which a construction loan may pay out money and still be protected against liens."). These paragraphs direct, among other things, that a mortgagee disburse funds to pay off prior encumbrances, to complete the improvement, and to pay the labor payrolls of contractors and subcontractors. These paragraphs operate "as a protection against fraud, and to insure that the disbursement would be for the use upon which the priority was predicated, that is, actual use in the improvement." Knollman Lumber Co. v. Hillenbrand, 29 N.E.2d 61, 63 (Ohio Ct. App. 1940).

The only one of these paragraphs at issue in this appeal is paragraph (F), which provides, "The mortgagee shall pay out on the owner's order, directly to materialmen or laborers who have performed labor or work or furnished material for the improvement." O.R.C. §1311.14(F). The bankruptcy court concluded that National City had complied with paragraph (F) because whenever Qualstan so directed, National City paid laborers, including Baumann, who performed labor on the Holt Park III project.

Baumann contends that paragraph (F) requires the mortgagee to pay the laborer "directly." Baumann argues that National City did not comply with paragraph (F) because it never paid funds directly

7

to laborers. National City paid only Qualstan directly, Baumann alleges.

According to the bankruptcy court, the evidence submitted at trial showed that Qualstan "occasionally" requested National City to wire funds to contractors, including those who worked on the Holt Park III project. When Qualstan made such a request, National City deposited the funds into Qualstan's account with National City and then wired the money out of Qualstan's account into the contractor's account. This practice is borne out in the exhibits and testimony submitted at trial. See, e.g., Tr. Ex. V-52.

This Court disagrees with Baumann's contention that National City failed to comply with paragraph (F) because it routed the loan proceeds through Qualstan's account, instead of wiring the funds directly to the contractor. As stated above, paragraphs (A) through (G) exist to ensure that a mortgagee who claims the benefit of §1311.14 actually disburses the proceeds for improvement of real estate. Paragraph (F) must be read with that purpose in mind. When the construction mortgage statute was first enacted in 1915, see Rider, 100 Ohio St. at 96, 125 N.E. at 133, the legislature likely did not have electronic wiring of funds in mind. Paragraph (F) ensures that laborers and materialmen actually receive payment whenever the owner directs the mortgagee to pay them. Thus, in Simpson v. Lewis, 3 Ohio Law Abs. 481 (Ohio Ct. Com. Pl. 1925), a mortgagee who, contrary to the owner's order, paid loan proceeds to the owner did not achieve priority.

Here, National City, when directed by Qualstan, paid loan proceeds to Baumann and other contractors. National City did so in a manner that ensured the contractors would get paid. Baumann does

8

not point to any evidence before the bankruptcy court that would suggest that National City's method of wiring money created opportunities for fraud. Section 1311.14 provides, "This section . . . shall be liberally construed in favor of such mortgagees, a substantial compliance by such mortgagees being sufficient." O.R.C. §1311.14. In light of that provision, this Court finds that National City complied with paragraph (F) when, at Qualstan's order and authorization, it deposited loan proceeds into Qualstan's account and then wired the money to contractors who had worked on the Holt Park III project.

### B. The Extent of National City's Priority

Baumann next argues that, even if National City has priority under §1311.14, the bankruptcy court should have found that sufficient funds existed to satisfy both the mortgage and Baumann's mechanics' liens. According to Baumann, the post-bankruptcy sale of Holt Park III units produced aver $3 million in proceeds. Baumann contends that this amount was sufficient to satisfy both National City's mortgage lien with respect to Holt Park III, which Baumann estimates to be worth about $300,000, and Baumann's mechanics' liens, worth an estimated $53,000.

Baumann's argument is not supported by the statute. Section 1311.14 gives priority over mortgage proceeds only. See O.R.C. §1311.14 ("[T]he lien of a mortgage given . . . to improve real estate . . . shall be prior to all mechanic's, materialmen's, and similar liens . . . *to the extent that the proceeds thereof* are used and applied for the purposes of and pursuant to this section.") (emphasis added). Baumann is mistaken in believing that even if National City has priority under §1311.14, Baumann is

entitled under the same statute to satisfy its mechanics' liens from the remainder of the sale proceeds. Simply put, §1311.14 grants National City priority over the loan proceeds applied to Holt Park III, with no amount going to Baumann.

Insofar as Baumann is asking the Court to hold that, aside from §1311.14, Baumann is somehow entitled to a portion of the remaining sale proceeds, the Court will not do so. The only matter before the Court on appeal is the bankruptcy court's decision under §1311.14 that National City's construction mortgage has priority over Baumann's mechanics' liens. Whether Baumann has priority to the remainder of the sale proceeds under other provisions of the Ohio Revised Code is not an issue before this Court.

Baumann lastly argues that priority should be examined on a unit-by-unit basis -- that is, National City's priority should extend only to those individual housing units within Holt Park III for which it can show compliance with §1311.14. Baumann argues that the bankruptcy court erred in allowing National City to obtain priority over the entire Holt Park III property without requiring individualized showings.

This argument is likewise without support. Nothing in the language of §1311.14 suggests a unit-by-unit approach. Instead, the statute speaks of the mortgage having priority over "the premises therein described." O.R.C. §1311.14. According to the bankruptcy court, the 1998 modification described the entire Holt Park III property. Moreover, even if Baumann's approach were to be adopted, Baumann has failed to point to any evidence showing that there are units within Holt Park III for which National City failed to comply with §1311.14.

**C.   Ohio Revised Code §5301.232**

In its brief in opposition to Baumann's appeal, National City argues that the bankruptcy court erred in finding that National City did not have priority under O.R.C. §5301.232.  This Court is without jurisdiction to consider National City's challenge to the bankruptcy court's decision.  National City never filed a notice of appeal of the bankruptcy court's July 8, 2004 Order.  A party's "failure . . . to timely file a notice of appeal deprives an appellate court of jurisdiction.  Compliance with Fed. R. App. P. 4(a) is a mandatory and jurisdictional prerequisite which [a] court can neither waive nor extend."  Rhoden v. Campbell, 153 F.3d 773, 774 (6th Cir. 1998) (citing Baker v. Raulie, 879 F.2d 1396, 1398 (6th Cir. 1989) (per curiam)); see also 28 U.S.C. §158 (c)(2) (applying the Federal Rules of Appellate Procedure to bankruptcy appeals).

**IV.   Conclusion**

For the reasons stated above, Baumann's appeal is DISMISSED and the bankruptcy court's July 8, 2004 Order is AFFIRMED.


                                       s/ James L. Graham
                                       JAMES L. GRAHAM
                                       United States District Judge

DATE: September 1, 2005

11